IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MASTER LINK CORPORATION**,

    Plaintiff,

    v.

**PUERTO RICO ELECTRIC POWER AUTHORITY**, *et al.*,

    Defendants.

Civil No. 15-1805 (GAG/BJM)

## REPORT AND RECOMMENDATION

Master Link Corporation ("Master Link") brings this suit against the Puerto Rico Electric Power Authority, Victor de Castro, Juan A. Tirado Chabebe, Jorge L. Rivera Martinez, and Miguel Del Valle[1] (collectively "PREPA"). Docket No. 9 ("Compl."). Master Link requests declaratory and injunctive relief; seeks relief under 42 U.S.C. § 1983; alleges violations of the First, Fifth, and Fourteenth Amendments; alleges a breach of contract under Puerto Rico Civil Code Article 1077, P.R. Laws Ann. tit. 31, § 3052; and alleges tortious defamation under Puerto Rico Civil Code Article 1802, *id.* § 5141. Docket No. 9. PREPA moved to dismiss the case, arguing Master Link must bring the suit in Puerto Rico state court as mandated by a forum-selection clause. Docket Nos. 15, 53. Master Link opposed, arguing its claims are not within the scope of the forum-selection clause and that public policy counsels against dismissal of the suit. Docket Nos. 44, 67. This matter was referred to me for a report and recommendation. Docket No. 26.

For the following reasons, the motion should be **GRANTED**.

## APPLICABLE STANDARD

In the First Circuit, a motion to dismiss based on a forum-selection clause is treated "as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775

---

[1] The individual defendants were sued in their individual and official capacities.

F.3d 41, 46 (1st Cir. 2014) (quoting *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009)). In *Atlantic Marine Co., Inc. v. U.S. District Court*, 134 S. Ct. 568, 580 (2013), the Supreme Court held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." Reasoning that the Court "explicitly declined to express a view as to whether a Rule 12(b)(6) motion is a proper alternative," the First Circuit has held that "absent a clear statement from the Supreme Court to the contrary, the use of Rule 12(b)(6) to evaluate forum selection clauses is still permissible in this Circuit." *Claudio-De Leon*, 775 F.3d at 46 n.3 (citing *Atl. Marine*, 134 S. Ct. at 579–80). Accordingly, I evaluate PREPA's motion under Rule 12(b)(6).

Under Rule 12(b)(6), "the district court must 'accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory.'" *Rivera*, 575 F.3d at 15 (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998)). And though review at this stage is generally limited to the allegations in the complaint, the First Circuit has recognized an exception: "the district court, may consider 'documents the authenticity of which are not disputed by the parties,' 'documents central to plaintiffs' claim,' and 'documents sufficiently referred to in the complaint.'" *Claudio-De Leon*, 775 F.3d at 46 (quoting *Rivera*, 575 F.3d at 15). The contract between Master Link and PREPA is such a document, and so it may be considered at this stage for the purposes of determining the enforceability of the contract's forum-selection clause. *See Claudio-De Leon,* 775 F.3d at 46.

## BACKGROUND

The following facts are drawn from the allegations in Master Link's amended complaint, as well as the contract referred to in the complaint and the motion to dismiss.

On January 3, 2011, Master Link and PREPA entered into a contract ("the contract") to establish a power station in the Municipality of Culebra by October 31, 2014. Compl. ¶ 3.1; Docket No. 15-1 at 52. During the initial phases of the construction project, Master Link discovered hydrocarbons on the construction site. Compl. ¶ 3.3. According to Master Link, PREPA and its representatives instructed it to dispose of the contaminated material in Culebra's municipal landfill. *Id.* ¶ 3.5. However, Master Link refused to do so without authorization from the Environmental Quality Board of the Commonwealth of Puerto Rico ("EQB"). *Id.* ¶¶ 3.6–3.8. Master Link contacted the EQB, which performed tests on the construction site, confirmed the presence of contaminated material, and ordered that the material be removed to an industrial landfill in Puerto Rico. *Id.* ¶¶ 3.6–3.10.

PREPA's representatives, the individual defendants named in the complaint, were annoyed with Master Link's representatives for having contacted the EQB, and so they engaged in a "pattern of arbitrary and capricious conduct against [Master Link] in the administration of the Contract." *Id.* ¶¶ 3.11–3.12. Master Link first alleges that it proposed a plan to remove the contaminated material on the site per "Appendix 4, item 1 of the Contract." *Id.* ¶¶ 3.12–3.13. However, despite Master Link's objections, PREPA contracted with a different company to remove the contaminated material. *Id.* ¶¶ 3.13–3.18.

Master Link next alleges that during the course of the project, PREPA modified the scope of the work contemplated by the contract by adding and subtracting tasks. *Id.* ¶ 3.19. These modifications delayed the construction beyond the October 31, 2014 deadline to complete the project. *Id.* ¶ 3.19. Because of the modifications, PREPA and Master Link

amended the contract. *Id.* ¶¶ 3.20–3.21. Master Link also requested additional funds to cover the delays and expenses associated with the additional tasks, but PREPA refused to meet with Master Link to discuss the requested funds. *Id.* ¶¶ 3.22, 3.23, 3.26.

Because PREPA refused to meet with Master Link, the latter alleges that it sent PREPA a letter explaining that "demobilization[2] was the correct path to take since [Master Link] ha[d] taken the project to a stage of substantial completion and only a series of [additional tasks remained] which impeded the completion of the project." *Id.* ¶¶ 3.26–3.27. PREPA allegedly "conveyed to [Master Link] that it could conduct a demobilization of the project if it performed" four additional tasks. *Id.* ¶ 3.28. Master Link agreed to do so and was paid accordingly. *Id.*

PREPA subsequently claimed Master Link withdrew from the project without its authorization. *Id.* ¶ 3.29. PREPA's representatives then met with the surety company, MAPFRE, to plan the completion of the construction project without Master Link's involvement. *Id.* ¶¶ 3.29–3.30. In addition, PREPA sent Master Link a letter declaring it in default of the contract. *Id.* ¶ 3.31. Master Link disputed that declaration, claimed that the notice of default violated the terms of the contract, and claimed that PREPA failed to follow the proper procedures to declare it in default of the contract. *Id.* ¶¶ 3.33–3.37. On two occasions, Master Link unsuccessfully requested that PREPA reconsider the notice of default. *Id.* ¶¶ 3.38–3.39.

Because PREPA declared that Master Link did not comply with the contract, the latter was suspended from PREPA's registry of suppliers and thereby prevented from

---

[2] As is illustrated by the events alleged in the complaint, the term "demobilization" essentially refers to Master Link's withdrawal from the construction project.

submitting bids to perform new projects for PREPA.[3] *Id.* ¶ 3.41. PREPA also informed the surety company that Master Link did not comply with the contract, prompting the surety company to investigate the matter. *Id.* ¶ 3.42.

Master Link alleges that PREPA breached the contract and that it has suffered "collateral effect[s]." *Id.* ¶¶ 3.45–3.51. The first collateral effect arises from Master Link's suspension from the registry of suppliers, which amounts to a "de facto debarment" according to Master Link because 95% of its work derives from contracts with PREPA. *Id.* ¶ 3.52. The suspension from the registry of suppliers has in turn led to a second collateral effect, namely, that Master Link has been "blacklisted" as a "firm that allegedly failed to comply with a government contract." *Id.* ¶ 3.63. As a result, Master Link alleges that it has not been considered for bids that it should have been awarded and has not been allowed to bid on PREPA's projects as either a contractor or subcontractor. *Id.* ¶¶ 3.68–3.75.

***Claims in Master Link's Amended Complaint***

The first cause of action alleges that PREPA violated the First Amendment by declaring that Master Link "default[ed]" on the contract, ending the commercial relationship between the parties, and suspending Master Link from PREPA's registry of suppliers. *Id.* ¶ 4.2.

The second cause of action alleges the manner in which PREPA terminated the contract violated "due process." *Id.* ¶ 5.2. Specifically, Master Link alleges that the notice of default, termination of the preexisting commercial relationship, debarment, and blacklisting implicate its property and liberty interests. *Id.* ¶ 5.2. Such interests are also

---

[3] Master Link was subsequently suspended for an additional year. Compl. ¶ 3.64.

allegedly implicated by PREPA's alleged failure to follow its rules and procedures governing the execution of construction projects and the procurement of contracts for those projects. *Id.* ¶ 5.3.

The third cause of action alleges that PREPA defamed Master Link by publishing to third parties that Master Link was in "default" of the contract, and by "debarring" and "blacklisting" Master Link. The fourth cause of action alleges PREPA breached the contract. *Id.* ¶ 7.2.

The fifth cause of action alleges PREPA "singled out" Master Link because it exercised its First Amendment rights and thus deprived it of the equal protection of the laws*. Id.* ¶ 8.2. Finally, Master Link seeks declaratory relief to establish that it did not breach the contract, as well as injunctive relief so that it may complete the work contemplated by the contract. *Id.* ¶¶ 9.1–9.13.

*Forum-Selection Clause*

It is undisputed that Article 8 of the contract contains a choice-of-law provision and forum-selection clause:

> This Contract shall be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico. Also, the contracting parties expressly agree that only the courts of Puerto Rico will be the courts of competent and exclusive jurisdiction to decide over the judicial controversies that the appearing parties may have among them regarding the terms and conditions of this Contract.

Contract art. 8, Docket No. 15-1 at 8. However, the parties dispute the scope of the forum-selection clause, as well as the clause's enforceability.

### DISCUSSION

PREPA contends the suit must be dismissed per the broad, presumptively enforceable forum-selection clause. Master Link responds the forum-selection clause

does not encompass all the claims in the amended complaint, and that a strong public policy makes the clause unenforceable.

I.     **Forum-Selection Clause**

Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Rivera*, 575 F.3d at 18 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972) (*Bremen*)). Two threshold questions arise when a party seeks dismissal based on a forum-selection clause: whether (1) the forum-selection clause is mandatory or permissive, and (2) the scope of the forum-selection clause encompasses the claims alleged. *See Claudio-De Leon*, 775 F.3d at 48 (citing *Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 93 (1st Cir. 2010) (*Conbraco*)).

A.     **Mandatory v. Permissive**

With respect to the first threshold question, the forum-selection clause provides that "*only* the courts *of* Puerto Rico" have "*exclusive* jurisdiction" over claims encompassed by the clause. Contract art. 8, Docket No. 15-1 at 8 (all emphases added). Because the forum-selection clause uses the terms "only" and "exclusive," it is mandatory. *See Rivera*, 575 F.3d at 17 n.5 ("typical mandatory terms" include "shall," "exclusive," "only," or "must"); *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 388 n.6 (1st Cir. 2001) ("exclusive jurisdiction" in the context of a forum-selection clause "refers to the intent of the parties [to have the court decline jurisdiction] rather than the actual power of the court").

And although the phrase the "courts *of* Puerto Rico" could refer to state or federal court under First Circuit precedent, PREPA argues without opposition that this phrase refers to Puerto Rico state court. *Compare LFC Lessors, Inc. v. Pac. Sewer Maint. Corp.*, 739 F.2d 4, 6 (1st Cir. 1984) (While "'courts of Massachusetts' could mean all the courts physically within the state or only those courts that trace their origin to the state, i.e., the Massachusetts state courts . . . . the latter meaning is more likely to have been intended

by the parties."), *with Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 925–26 (10th Cir. 2005) (The phrase "courts of the State of Colorado" directed the suit to Colorado state court, and not federal court, because the term "of" referred to sovereignty rather than geography). Because the parties agreed the courts of Puerto Rico would have "exclusive" jurisdiction, and this language provides an indication of the parties' intent, the claims encompassed by the clause must be brought in Puerto Rico state court. *See Am. Soda*, 428 F.3d at 927 ("by consenting to state court jurisdiction and selecting the state courts as the 'exclusive forum,' the parties indicated their intent to make venue exclusive in state court"); *Silva*, 239 F.3d at 388 n.6.

>    B.    Scope of the Forum-Selection Clause

With respect to the second threshold question, "it is the language of the forum selection clause itself that determines which claims fall within its scope." *Rivera*, 575 F.3d at 19. The contract, which includes the forum-selection clause, is governed by Puerto Rico law because Article 8 contains a choice-of-law clause. *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 21 (1st Cir. 2011). Neither party contends Puerto Rico law "varies from ordinary contract principles," and so the scope inquiry turns on "plain language, attributed purpose, available precedent, and any background policy considerations that may bear." *Id.*

The forum-selection clause mandates that Puerto Rico state courts will "decide over the judicial controversies that the appearing parties may have among them regarding the terms and conditions of this Contract." Contract art. 8, Docket No. 15-1 at 8. Master Link contends the clause is narrow, emphasizing the phrase "regarding the terms and conditions of this Contract." Focusing the court's attention to this language, Master Link posits that its non-contract-based claims are beyond the scope of the forum-selection clause because those claims do "not involve pure claims based on 'the terms and conditions' of the Contract." Pl.'s Opp'n 3.

As an initial matter, Master Link's suggestion that this court focus on whether its claims sound in contract is unpersuasive, as the "applicability of a forum selection clause does not depend on the nature of the underlying action." *Rivera*, 575 F.3d at 19. Accordingly, parties cannot "evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute." *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) (quoting *Pascalides v. Irwin Yacht Sale N., Inc.*, 118 F.R.D. 298, 301 (D.R.I. 1988)). For this reason, the First Circuit has held that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Lambert*, 983 F.2d at 1122.

Other circuit courts have similarly so held when the resolution of a tort claim relates to the interpretation of the contract. *See Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444–45 (5th Cir. 2008); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983). This court has applied the foregoing analysis to a suit that initially alleged both contractual and constitutional tort claims. *See Data Research Corp. v. Rey Hernandez*, 261 F. Supp. 2d 61, 71 n.13 (D.P.R. 2003) ("plaintiffs have dismissed their breach of contract claims, but their constitutional tort claims involve the same operative facts"), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 65–66 (1st Cir. 2004). With this authority underfoot, I examine the scope of the forum-selection clause in this case.

The language of the forum-selection clause that PREPA emphasizes ("the judicial controversies that the parties may have among them") is broad, does not expressly limit the clause to contract-based claims, and essentially covers any claim or dispute. The other part of the clause ("regarding the terms and conditions of the terms of this Contract"), which Master Link emphasizes, does not narrow the forum-selection clause so as to limit its reach to contract claims.

In *Huffington*, the First Circuit considered the scope of a forum-selection clause which stated that "[t]he courts of the State of Delaware shall have exclusive jurisdiction over any action, suit or proceeding with respect to this Subscription Agreement." 637 F.3d at 20. Huffington, the party resisting the forum-selection clause, argued that the phrase "with respect to" narrowed the clause so as to make it applicable only to contract claims. *Id.* at 21. The court held the clause invited a "broader application" and rejected Huffington's argument, reasoning that the argument "would wear well if the clause encompassed only claims 'to enforce or for breach of' th[e] agreement." *Id.*; *Cf. Conbraco*, 619 F.3d at 93.

*Huffington*'s conclusion was confirmed "by the usual sources: dictionaries and case law construing such phrases." The phrase "with respect to" is synonymous with the phrase "with reference or regard to something," *See id.* (citing 13 *The Oxford English Dictionary* 732 (2d ed. 1989) (emphasis omitted)). In turn, the term "respect" in the context of the phrase "with respect to" means "relation," "reference," "connection," or "association" to a particular thing. *Huffington*, 637 F.3d at 21. Accordingly, the First Circuit held that "a suit is 'with respect to' the agreement if the suit is related to that agreement—at least if the relationship seems pertinent in the particular context." *Id.*

That conclusion was also confirmed by case law—which holds that the phrase "with respect to" and similar phrases are broader than the "concept of a causal connection" and mean simply "connected by reason of an established or discoverable relation." *Id.* (citing *Coregis Ins. Co. v. Am. Health Found., Inc.,* 241 F.3d 123, 128–29 (2d Cir. 2001) (Sotomayor, J.) (collecting authorities) and *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.,* 119 F.3d 1070, 1074–75 (3d Cir. 1997) (Alito, J.)).

In this case, the term "regarding" precedes the phrase "terms and conditions of this Contract." Because the term "regarding" is as broad as the phrase "with respect to," it does not narrow the otherwise broad forum-selection clause. *See id.*; *Greenfish II, L.P. ex rel. Purplefish, LLC v. Int'l Portfolio, Inc.*, No. 11–7628, 2012 WL 3024759, at *6 n.4

("The term 'regarding' means 'related to or 'concerning,' *Oxford English Dictionary* (2002), both having broad meaning."). Indeed, the term "regarding" is synonymous with the term "with respect to" and other similar phrases. *The American Heritage Dictionary* (3d ed. 1992); *see also Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) (defining "regarding" as "with respect to; concerning"); *Roget's International Thesaurus* § 9.13 (4th ed. 1977) ("regarding" is synonymous with the terms "with or in relation to," "with or in regard to," "with or in reference to," "in connection with," and "concerning") (emphases omitted).

Moreover, because "[f]orum selection clauses using embracing language are common and have usually been construed broadly," a broad construction of the forum-selection clause is appropriate here. *Huffington*, 637 F.3d at 23 ("narrower language," such as "to enforce" or "to construe," could be used when a forum-selection clause is intended to be narrow). Indeed, "[t]he purpose of a forum selection clause . . . is, at least in part, to protect defendants and give them a voice as to where a dispute will be heard and resolved." *Claudio-De Leon*, 775 F.3d at 47. And Puerto Rico law does not suggest a different conclusion. *See* P.R. Laws Ann. tit. 31, § 3474 ("If any stipulation of a contract should admit of different meanings, it should be understood in the sense most suitable to give it effect."); *Irizarry v. García*, 155 D.P.R. 713, 726 (P.R. 2001) ("[W]hen construing a contract, one must presuppose fairness, correction and good faith in its wording and construe it in such a manner that leads to results consonant with the contractual relationship as required by ethical standards."); *Unisys P.R., Inc. v. Ramallo Bros. Printing, Inc.*, 128 D.P.R. 842, 855 (P.R. 1991) (relying for "persuasive value, on the United States case law which has dealt extensively with the issue of" the enforceability of a forum-selection clause).

In sum, the claims in Master Link's amended complaint are encompassed by the forum-selection clause if they are related to "the terms and conditions of the Contract" and that relationship "seems pertinent." *See Huffington*, 637 F.3d at 21. Because this

analysis "does not depend on the underlying nature of the action," *Rivera*, 575 F.3d at 19, the non-contract-based claims are also encompassed by the clause if they arise from the same operative facts as the contract-based claims or their resolution requires interpretation of the terms and conditions of the contract. *See, e.g.*, *Lambert*, 983 F.2d at 1122; *Manetti-Farrow*, 858 F.2d at 514. I consider each of the claims in the amended complaint, though not in the order they appear therein.

The fourth cause of action alleges that PREPA breached the contract. As Master Link hesitantly acknowledges, this claim is surely within the scope of the forum-selection clause. Pl.'s Opp'n 5. Indeed, to determine whether Master Link breached the contract, the court would necessarily have to interpret the terms and conditions of the contract. And as is explained below, all the other claims in the amended complaint are related to the inquiry required by the fourth cause of action.

The first cause of action asserts a violation of the First Amendment. Master Link alleges that PREPA declared it in default of the contract. Master Link's alleged failure to comply with the contract resulted in its suspension from bidding on additional PREPA contracts. In turn, the suspension has damaged Master Link's ability to enter into other contracts. Also evident from the face of the complaint is Master Link's allegation that it did not breach the contract with PREPA. Master Link alleges it complied with the contract, and that PREPA declared Master Link in default because the latter contacted the EQB to determine how to dispose of the contaminated material on the construction site.

Because Master Link's breach of contract claim and First Amendment claim arise from the same operative facts, the Puerto Rico state courts should adjudicate the First Amendment claim. *See Lambert*, 983 F.2d at 1122. In addition, to determine whether PREPA retaliated against Master Link or rightfully declared Master Link in breach of the contract, it is necessary to interpret the terms and conditions of the contract. *Manetti-Farrow*, 858 F.2d at 514. Because the parties have agreed that the Puerto Rico state courts will interpret the contract, the First Amendment claim should be dismissed.

For similar reasons, Master Link's second, third, and fifth causes of action should be dismissed. Specifically, Master Link's second cause of action alleges that the manner in which PREPA terminated the contract with Master Link violated due process. This inquiry would require the court to consider whether PREPA complied with the contract. The second cause of action also alleges that PREPA has violated due process in the procurement process for new contracts. Because PREPA has suspended Master Link from bidding on contracts because of Master Link's prior, alleged breach of contract, this claim must also be adjudicated in the Puerto Rico state court system.

The third cause of action alleges that PREPA defamed Master Link by declaring it in default of the contract. To determine whether that statement was false and defamatory, it would be necessary to interpret the terms and conditions of the contract to determine whether Master Link indeed breached the contract. *See, e.g.*, *Soc. de Gananciales v. El Vocero de P.R.*, 135 D.P.R. 122 (P.R. 1994) ("it must be proved that the information about the person slandered is false").

The fifth cause of action alleges PREPA treated Master Link unequally because it exercised its First Amendment rights. This claim should be dismissed because it necessarily depends on Master Link's First Amendment claim that itself should be dismissed for the reasons detailed above.

The sixth cause of action requests declaratory and injunctive relief. Specifically, Master Link asks the court to issue a declaratory judgment stating that it did not breach the contract. In its request for injunctive relief, Master Link seeks to be reinstated so that it may complete the work contemplated by the contract. Both of these requests would require the court to interpret the terms and conditions of the contract, and so the courts of Puerto Rico should adjudicate these issues per the forum-selection clause.

Finally, Master Link suggests the suit may not be dismissed because the individual defendants "are not parties to the Contract." Pl.'s Opp'n 12. Not so. A forum-selection clause covers tort claims against non-signatories if those claims ultimately

depend on the existence of a contractual relationship between the signatory parties. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013); *Coastal Steel Corp.*, 709 F.2d at 203. Because all the claims against the individual defendants relate to the contract between Master Link and PREPA, the claims against them are encompassed by the clause. Thus, all the claims in Master Link's amended complaint are encompassed by the forum-selection clause.

## II.     Enforceability of the Forum-Selection Clause

Having determined that all the claims in the amended complaint are encompassed by the forum-selection clause, those claims should be adjudicated in Puerto Rico state court unless Master Link, which bears a "heavy burden of proof," makes a "strong showing" that the clause should be set aside. *See, e.g.*, *Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 292 (1st Cir. 2015). Under the *Bremen* factors, that strong showing is made where: "(1) the clause is the product of fraud or overreaching; (2) enforcement is unreasonable and unjust; (3) its enforcement would render the proceedings gravely difficult and inconvenient to the point of practical impossibility; or (4) enforcement contravenes 'a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision.'" *Id.* (quoting *Huffington*, 637 F.3d at 23).

Arguing under the fourth *Bremen* factor, Master Link contends that enforcing the forum-selection clause in this case would contravene a strong public policy. Specifically, with reference to its claims alleging constitutional violations, it argues "that in federal question cases, forum selection clauses are not generally enforced" because they "conflict" with "the federal court's obligation to exercise jurisdiction in matters of direct federal concern." Pl.'s Opp'n 7. To support its argument, Master Link chiefly relies on *Red Bull Associates v. Best Western International, Inc.*, 862 F.2d 963 (2d Cir. 1988). In that case, the Second Circuit affirmed the district court's denial of a motion to transfer despite a forum-selection clause, reasoning that the lower court acted within its discretion

Case 3:15-cv-01805-GAG   Document 96   Filed 01/20/16   Page 15 of 17

Master Link Corp. v. Puerto Rico Electric Power Authority, Civil No. 15-1805 (GAG/BJM)                    15

when it held that the transfer of the case to a different district court would undermine civil rights statutes. *Id.* at 966–67.

Master Link reads the holding of *Red Bull* too broadly. That case did not adopt a categorical rule preventing the enforcement of forum-selection clauses in civil rights cases; instead, it held that "'a strong federal public policy favoring enforcement of the civil rights laws' requires that courts invalidate a forum selection clause *where enforcement 'would frustrate that purpose.'*" *Martinez v. Bloomberg, LP*, 740 F.3d 211, 218 (2d Cir. 2014) (quoting *Red Bull*, 740 F.3d at 967) (emphasis added). Indeed, *Martinez* illustrates that the Second Circuit did not adopt the categorical rule Master Link suggests. In that case, an employee resisted the enforcement of a forum-selection clause in a disability discrimination suit, but failed to show that "the foreign forum's anti-discrimination law was insufficient to deter employers from violating the civil rights of individuals with disabilities." *Id.* at 229–30. Accordingly, the Second Circuit held that the employee "failed to overcome the presumptive enforceability of the forum selection clause" and affirmed the trial court's dismissal of the discrimination claim. *Id.* at 230.

Master Link has failed to show that a strong public policy counsels against enforcing the forum-selection clause in this case, as state and federal courts have concurrent jurisdiction over § 1983 actions alleging violations of a plaintiff's federal constitutional rights. *See Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 (1987) ("federal and state courts have concurrent jurisdiction over actions brought under § 1983"); *Patsy v. Bd. of Regents*, 457 U.S. 496, 506 (1982) ("many legislators interpreted the bill [enacting § 1983] to provide dual or concurrent forums in the state and federal system, enabling the plaintiff to choose the forum in which to seek relief"); *see also* Erwin Chemerinsky, *Parity Reconsidered: Defining a Role for the Federal Judiciary*, 36 UCLA L. Rev. 233, 311 (1988) ("The congressional creation of concurrent state and federal jurisdiction in constitutional cases, which allows the plaintiff to choose state or federal court, and removal jurisdiction, which permits the defendant to take a case

from state to federal court, evidences Congress's desire to leave forum selection to the parties.").

Indeed, the courts of Puerto Rico may (and do) exercise jurisdiction over § 1983 claims. *See, e.g.*, *Acevedo v. Srio. Servicios Sociales*, 12 P.R. Offic. Trans. 317 (P.R. 1982). Master Link does not argue to the contrary, and does not otherwise explain why it will be deprived of its day in court if it must litigate the constitutional claims in Puerto Rico state court. *Fireman's Fund Am. Ins. Cos. v. P.R. Forwarding Co., Inc.*, 492 F.2d 1294, 1297 (1st Cir. 1974) ("To establish that a particular choice-of-forum clause is unreasonable, a resisting party must present evidence of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that it is effectively deprived of its day in court."). Because Puerto Rico state courts may exercise jurisdiction over all the claims in the amended complaint, and Master Link does not otherwise show that it is unreasonable to enforce the clause, it has failed to overcome the forum-selection clause's presumptive enforceability. Thus, the court should dismiss without prejudice all of the claims in Master Link's amended complaint. *See Claudio-De Leon*, 775 F.3d at 49 ("dismissals due to forum selection clauses [are] dismissed without prejudice so the case may be re-filed in the appropriate forum").

## CONCLUSION

For the foregoing reasons, the motion should be **GRANTED**. Accordingly, the court should dismiss without prejudice all the claims in Master Link's amended complaint

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun.*

Master Link Corp. v. Puerto Rico Electric Power Authority, Civil No. 15-1805 (GAG/BJM)    17

*Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 20th day of January 2016.

*S/Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge